Antonio Mongil SUAREZ, Plaintiff,

v.

**ADMINISTRADOR DEL DEPORTE HIP-ICO DE PUERTO RICO and Junta Hipi-ca de Puerto Rico, Defendants.**

Civ. No. 915–71.

United States District Court,
D. Puerto Rico.

Aug. 31, 1972.

Harry Anduze Montano, San Juan, P. R., for plaintiff.

José Anglada, Department of Justice, Old San Juan, P. R., for defendant Administracion Del Deporte Hipico De Puerto Rico.

Harvey B. Nachman, San Juan, P. R., for intervenor, Asociación Hipica De Puerto Rico.

## MEMORANDUM OPINION

TOLEDO, District Judge.

Plaintiff and intervenor have brought action against the defendants under Section 1343, Title 28, United States Code and under the Civil Rights Act, 42 United States Code, Section 1983 and have requested a three-judge court to be convened under the provisions of 28 United States Code, Section 2281, seeking injunctive and affirmative relief. It seeks to enjoin the Racing Administrator of Puerto Rico and the Racing Board from applying provisions of the Puerto Rico Racing Sport Administration Regulation, which regulate and control, plaintiff alleges, all matters concerning the racing sport within the Commonwealth of Puerto Rico, which has direct relation to plaintiff's and intervenor's participation in the racing sport as horseowners and breeders.

Igneitó, a race horse owned by plaintiff, Antonio Mongil Suarez, was suspended by the Racing Administrator of Puerto Rico, after it was found that the horse was doped. The plaintiff complains that his federal due process rights have been violated, inasmuch as he was adjudged an innocent victim. Furthermore, plaintiff claims that he has been deprived of his property, subject to humiliation, shame and interference in his chosen career as a horseowner and breeder by the action of the administrator acting under a regulation which the courts of the Commonwealth of Puerto Rico have interpreted to require the imposition of such a penalty. Ramon Llovet, as President, and the Associación Hípica de Puerto Rico (herein after Horseowners' Association), were granted leave to intervene as a class because they claim that they are equally

affected by the ruling. Plaintiff and intervenors contend that the regulations of the Racing Board and the action of the Administrator deprive them of their guaranteed federal constitutional rights. They request that a three-judge court be convened to declare the regulations of the Racing Board unconstitutional.

A temporary restraining order was entered against the Administrator and the parties have stipulated to extend said order until all memoranda were filed and the Court decided the jurisdictional issues. The Administrator has requested dismissal. He asserts that the prerequisites to convene a three-judge court have not been met, that the constitutional claim is insubstantial, that the state remedies have not been exhausted, that the federal court ought to abstain, and that it should not interfere with the Commonwealth Court proceedings. After considering these thorny problems, we concluded that jurisdiction lies and a three-judge court shall be convened.

## I.—THE FACTS

On November 28, 1970, Igneito, the then two-year old thoroughbred champion of Puerto Rico was entered in the fourth race at the El Comandante racetrack. During the pre-race saddling, it became obvious to Mongil and his employees that the horse was unfit and probably drugged. The track veterinarian was called and insisted over the owner's protests that the horse compete. Igneito ran last, and before the race was finished Mongil was calling the stewards requesting saliva and urine tests. The tests were performed and were positive.

Igneito was summarily suspended pursuant to regulation. After an investigation in which Mongil was exonerated of any wrongdoing, the horse was further suspended for six months because the Administration deemed the suspension mandatory under the regulation of the Racing Board set out in the margin.[1] Plaintiff requested administrative review by the Junta Hipica (hereinafter Racing Board), and was compelled to resort to the Courts when that agency rendered no opinion.[2] On March 5, 1971, the Superior Court, confirmed the suspension on the basis of the administrative record and the briefs. However, during the pendency of the proceedings, Mr. Mongil was allowed to post a bond to guarantee the return of any prizes or purses in case of confirmation of the Administrator's ruling, and Igneito was allowed to compete. The horse raced and won more than $18,000 in purses during that period, which the owner has been directed to return. It is that return which has been restrained by the order of this Court.

1. 186–1104. Responsibility for physical condition of horses. The owner, trainer, groom and groom's helper are responsible to the Administration for the physical condition of their horses and it shall be their absolute responsibility to see to it that none of their horses is stimulated or depressed and that it is not administered any drug or substance whatsoever that might affect the natural condition of the same.

186–1117. Positive result; suspension of persons responsible. Upon receiving a report from the chemist certifying that a specimen is positive for any drug or substance that stimulates, depresses or alters the natural condition of the horse, the Administrator shall suspend the affected horse and may suspend the owner, trainer, groom or groom's helper connected with said horse as well as all of the horses belonging to said owner.

186–1401. Specific penalties.
Any violation of the sections of this title hereinbelow set forth shall be penalized as follows:
. . . Subdivision 11: . . . Any violation of this provision of Subdivision 11 shall be punished in the following manner:
(1) The first violation—suspension for a term of not less than 6 months.
(2) In case of repetition, cancellation of the license.
(3) Suspension of the horse to which the stimulant or depressant was given, as well as suspension of all of the horses belonging to the owner in the discretion of the Administrator for a period of not less than 6 months.

2. One board member voted to affirm, one to reverse and one disqualified himself because of illness.

A petition for a writ of certiorari was denied by the Supreme Court of Puerto Rico on September 8, 1971, and on October 13, 1971, it denied reconsideration. No opinion was filed on either occasion.

## II.—PRE-REQUISITES TO SUIT UNDER 28 U.S.C. § 2281

### A. Substantial Constitutional Claim:

▇ The initial inquiry must be whether the complaint and intervening complaint comply with the requirements of Section 2281. Under the cases, a state statute or regulation must be challenged, a state officer performing an official function must be the named defendant, injunctive relief must be sought and the statute or regulation must be alleged to be violative of the Federal Constitution. See Gilhool v. Chairman, (E.D.Pa.1969), 306 F.Supp. 1202; Marín et al. v. University of Puerto Rico et al., 346 F.Supp. 470 (D.P.R.1972), Memorandum Opinion entered on May 25, 1972. We are obliged to treat the Commonwealth statutes and regulations the same as if Puerto Rico were a state for purposes of Section 2281 jurisdiction. Mora v. Mejías, (D.P.R.1953), 115 F. Supp. 610, 613; Wackenhut Corp. v. Aponte, (D.P.R.1966), 266 F.Supp. 401; Marín et al. v. University of Puerto Rico et al., supra.

The state statute or regulation at stake must be challenged so that a substantial constitutional claim be at issue. Swift and Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965); Santiago v. Corporación de Renovación Urbana v. Vivienda et al. (1 Cir. 1972), 453 F.2d 794.

Both complaints satisfy these requirements. It is alleged that the regulations 186–1104 and 186–1117, 15 R.R.P.R., are violative of the Fifth and Fourteenth Amendments. The state officer, the Racing Administrator, is the named defendant and the real party in interest. Both the plaintiff and intervenors seek to enjoin the Administrator from enforcing the challenged regulations and from redistributing the prize money.

The plaintiff is laboring under an actual interdiction and the intervenors under a threatened one every time their horses compete.

▇ Defendant also contends that this action does not involve anything more than a sum of money and that there is no substantial personal constitutional right involved. Moreover, it is claimed that only the claim of Mr. Mongil is involved. However, the Supreme Court has held that there is no distinction between property rights and other human rights in action brought under the Civil Rights Acts. Lynch v. Household Finance Corporation, 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972). On the other hand, it is alleged in the complaints that the regulations herein attacked are of vital importance to the administration of the sport of horse racing in Puerto Rico; that because of reciprocity arrangements horse racing is inter-state in character; and that the issues involved are the rights of horse owners to equal protection, privileges and immunities and statutory due process. The Court finds that the rights involved are substantial and federal in nature. Monroe v. Pape, 365 U.S. 167, 171–187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); McNeese v. Board of Education, 373 U.S. 668, 674, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963). A separate and independent right of action exists in the federal courts for alleged deprivation of civil and constitutional rights secured by the Federal Constitution. Damico v. California, 1967, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); King v. Smith, (1968), 392 U.S. 309, 313, 88 S. Ct. 2128, 20 L.Ed.2d 1118 (1968); Houghton v. Shafer, 392 U.S. 639, 88 S. Ct. 2119, 20 L.Ed.2d 1319 (1968).

### B. Statewide Applicability

In the recent case of Board of Regents of University of Texas System v. New Left Education Project, 404 U.S. 541, 92 S.Ct. 652, 30 L.Ed.2d 697 (1972), the Supreme Court of the United States held that a three-judge court had been improperly convened to deter-

mine the constitutionality of the general student regulation of the University of Texas. The Court decided that rules promulgated by the University of Texas Board of Regents restricting commercial and non-commercial solicitation on the university campuses are of local import only, and that three-judge court was improperly convened to determine their constitutionality.

In the Texas case, the Court noted that the rules promulgated by the Board of Regents extends to but three of the twenty-three four-year state colleges and universities of Texas. In addition, Texas has 31 junior colleges which are not within the University of Texas system. In view of this finding, the Court followed the ruling in Moody v. Flowers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967), that a single judge, not a three-judge court, must hear the case where the challenged statute or regulation is of only local import.

The Court observed its often repeated admonition that the three-judge court statute, 28 United States Code 2281, is to be strictly construed. The rule announced in Moody v. Flowers, supra, achieves the Congressional purpose of minimizing the burden which the three-judge court places on the Federal judiciary and avoids unduly expanding the court's carefully limited appellate jurisdiction.

■ This Court is of the opinion that the challenged regulations and statute express a policy concerning horseracing in general in Puerto Rico of unquestioned state-wide application and that, therefore, a three-judge court is required to pass on its constitutional validity. .

The horse racing sport in Puerto Rico is one of great economic impact in the local economy. The gross amount in wages in 1970 was $61,279,811.13; amount which represents an increase of $5,621,201.59 over the amount played in 1969.[3] In 1971, the gross amount in wages was $70,433,275.48, an increase of $9,153,464.35 over the amount registered in 1970.[4]

Betting is generated from 536 off-track betting agencies throughout Puerto Rico[5] and from fans that visit the El Comandante Racing Track. During 1970, the total amount of persons attending El Comandante was 501,194; during 1971, the total was 474,262.[6]

The challenged regulations govern the conduct of horse racing in Puerto Rico and the control exercised by the defendants through this statute and these regulations have a binding effect over the entire Commonwealth. The challenged statute and regulations effectuate a statewide public concerning all matters related to horse racing in Puerto Rico.

The Horse Racing Sport Regulations are not a municipal ordinance of purely local impact. They affect horseowners, racing fans and off track agency owners in all Puerto Rico. Those regulations are the expression of the public policy of Puerto Rico with regard to conduct of horse races within the Commonwealth Jurisdiction.[7]

The intervenors have not only complied with the requirements of Section 2281, and the Civil Rights Act, 42 United States Code 1983, but have also carefully drawn their pleadings to conform to the strict requirements of Rule 23 of the Federal Rules of Civil Procedure. The defendants have not challenged the

3. Press Release No. 71–16, Office of the Racing Administrator, January 22, 1971.

4. Press Release No. 72–30, Office of the Racing Administrator, January 17, 1972.

5. Statement of Off Track Agencies by town up to June 30, 1972. Office of Racing Sport Administrator, prepared on July 18, 1972. The Off Track Agencies

are distributed among seventy one towns in every municipality of Puerto Rico.

6. Statistical information included in documents referred to in Notes 4 and 5, supra.

7. See 15 L.P.R.A. 186(1) ; 15 L.P.R.A. 186(3) and (9) ; 15 L.P.R.A. 187(1) and (2).

intervening complaint nor the fact that the representative plaintiffs truly represent the entire class of horseowners.

■ Both the individual plaintiff and the intervening plaintiffs have standing to interpose this action. It is clear that neither economic injury nor specific individual rights are necessary to the issue of standing. Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); Scenic Hudson Preservation Conference v. Federal Power Commission, (2 Cir. 1965), 354 F.2d 608. There is a concrete adversity, and the interests sought to be protected are within the zone of interests to be protected or regulated by the Racing Board's Regulations. Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); Coalition For Community Action v. Romney, (D.Ill.1970), 316 F. Supp. 742, 747–748.

## III.—EXHAUSTION OF STATE REMEDIES AND ABSTENTION

One must cautiously thread his way through recent Supreme Court federal jurisdictional decisions in this area. Hobbs v. Thompson, (5 Cir. 1971), 448 F.2d 456. It is equally disturbing that there may be greater judicial waste in failing to convoke a three-judge court when substantial constitutional issues are raised than in a single judge deciding otherwise. Johnson v. New York State Education Department, (2 Cir. 1971), 449 F.2d 871. (Dissenting Opinion, Kaufman, J.). Under the guidelines of Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962), a three-judge court should be convoked unless the defendant is correct in its allegations of pseudojurisdictional defects of exhaustion, abstinence and comity.

■ Exhaustion of state judicial remedies is not a prerequisite for invoking federal jurisdiction under 42 United States Code 1983, Marín et al. v. University of Puerto Rico et al., supra, 346 F. Supp. at 476, and cases cited therein.

This Court is of the opinion that the issue of abstention in this case involves two separate inquiries; the first, whether the courts of the Commonwealth have decided the Federal constitutional issue; the second, if the state courts have not ruled on this issue, have they had the opportunity to definitely interpret the allegedly offensive regulations.

■ Here, the plaintiff did go to the local courts first. The defendant, citing England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S. Ct. 461, 11 L.Ed.2d 440 (1963), alleges that the plaintiff unreservedly submitted the federal constitutional issues to the Commonwealth courts and his only remaining recourse was to petition the Supreme Court for review.

The Supreme Court, in *England*, supra, held at page 419, 84 S.Ct. at page 467:

"  .  .  . "We now explicitly hold that if a party freely and without reservation submits his federal claims for decision by the state courts, litigates them there, and has them decided there, then—whether or not he seeks direct review of the state decision in this Court—he has elected to forgo his right to return to the District Court.""

The Court has, therefore, carefully analyzed the pleadings and briefs of the plaintiff. The net effect of this mass of papers was to request the Superior and Supreme Court of Puerto Rico to construe the regulation contrarywise from the construction of the Administrator on the grounds of logic, grammar, state law and the state constitutional guarantees. The federal constitutional challenge was alleged but only as a backdrop for local construction. There was neither an exhaustive nor extensive argument of the federal claims; merely a presentation thereof as required by the reading of Government and Civic Employees Organizing Committee, CIO v. Windsor, 353 U. S. 364, 77 S.Ct. 838, 1 L.Ed.2d 894 (1957) and England v. Louisiana State Board of Medical Examiners, supra.

Had the plaintiff filed in this Court in the first instance, we would have been constrained to remand the state issues to the local courts for an authoritative construction of the regulations under the teaching of these cases and Fornaris v. Ridge Tool Co., 400 U.S. 41, 91 S.Ct. 156, 27 L.Ed.2d 174 (1970). It is apparent that plaintiff did no more than this Court would have required him to do. To insist that plaintiff was under the obligation to initiate his action in this Court and then to be relegated to the Superior Court with a reservation of the federal issues here, would only strain the aggravated calendar of this Court and force sterile duplication of effort.

The present action is distinguishable from the recent decision entered by the Court of Appeals for the First Circuit in the case of P. I. Enterprises, Inc. v. Cataldo, 457 F.2d 1012.

The Cataldo case holds that federal courts have no jurisdiction to directly review final adjudications of federal constitutional claims that have been voluntarily submitted to and actually litigated at and determined by the State Courts against the appearing plaintiff in the Federal District Court.

Unlike the situation in the Cataldo case, no final adjudication was made by any Commonwealth Court with respect to the federal claims presented by the appearing plaintiff before this Court; the plaintiff is seeking no review from any determination made by the Supreme Court of the Commonwealth, that Court entered a "NO HA LUGAR" which is equivalent to a "Certiorari Denied"; no voluntary submission was made by the appearing plaintiff to the Commonwealth Court for them to make a final and complete adjudication of his federal claims. Lacking a final determination by the Supreme Court of Puerto Rico of these federal issues no "res judicata" or collateral estoppel can be raised against the present cause of action alleged by the appearing plaintiff and intervenors.

The case at bar falls within the Cataldo doctrine, which is only a logical extension of the England-Windsor doctrine. The plaintiff followed this doctrine as required from him by the Wackenhut, supra, and Fornaris, supra, cases which are the law in this jurisdiction. Plaintiff made no voluntary or unreserved submission for final adjudication on the merits of the present action.

■ There remains the contention of the defendant that the federal constitutional issues were impliedly decided by the denial of certiorari by the Supreme Court of Puerto Rico. The plaintiff did not appeal to the Supreme Court as he might have done had he made the constitutional issues paramount. Except for constitutional issues, there is no automatic appeal to the Supreme Court of Puerto Rico. By utilizing the procedure of certiorari plaintiff avoided a direct confrontation of the federal constitutional issue in the Supreme Court. Nor does the denial of certiorari even mean that the Supreme Court had adopted the decision of the Superior Court.

The defendant in his memorandum indicates that the "NO HA LUGAR" (Certiorari Denied) entered by the Supreme Court of Puerto Rico denying the writ requested by the plaintiff had the effect of determining that the judgment against the plaintiff entered by the Superior Court was sound and that Justices of the Supreme Court of Puerto Rico had no doubt as to the validity of the Statute or governmental action questioned.

The defendant's contention is a misconception regarding the exercise of discretion by the Supreme Court of Puerto Rico in not bringing a case for review. The denial of the plaintiff's Petition for Certiorari in no way implies that the Supreme Court of Puerto Rico approves the decision of the Superior Court. It means and means only that for some reasons, known only to the Justices of that Court, the case "did not commend itself to at least four members of the

Court as falling within those considerations which should lead (that Court) to exercise its discretion in reviewing a lower court's decision". Sheppard v. State of Ohio, 352 U.S. 910, 77 S.Ct. 118, 1 L.Ed.2d 119 (1956). For an example explanation of this matter, see Opinion by Justice Frankfurter in State of Maryland v. Baltimore Radio Show, 338 U.S. 912 (1950) at 917–919, 70 S. Ct. 252, 94 L.Ed. 562. See also Martin v. Beto, (5 Cir. 1968), 397 F.2d 741, at 743; Beck v. Winters, (8 Cir. 1969), 407 F.2d 125 at 127, Note 4.

It is, therefore, clear that no inference can be drawn from a denial to issue a writ of certiorari as an indication of the view of the Supreme Court on the merits.

■ However, the doctrine of abstention, which had its genesis in Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), was developed to minimize federal-state frictions and to avoid unnecessary decisions of constitutional issues. Generally, Federal Courts have applied the abstention doctrine only when the resolution of the federal constitutional question is dependent upon, or may be materially altered by the determination of an uncertain issue of state law, Harman v. Forssenius, 380 U.S. 528, 85 S. Ct. 1177, 14 L.Ed.2d 50 (1964). That is, federal courts should abstain only in cases where the applicable state law which would be dispositive of a matter in controversy was unclear and where a state court interpretation of the state law question might obviate the necessity of deciding the federal constitutional issue. Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970). Where the issue of state law is uncertain and the state may construe it in such a way so as to render it constitutionally sound, then it would be inviting unnecessary friction to have the Federal courts intervene with what can be best dealt with by the state courts, Fornaris v. Ridge Tool Co., supra. See also Askew v. Har-

grave, 401 U.S. 476, 91 S.Ct. 856, 28 L. Ed.2d 196 (1971).

■ The Superior Court's interpretation of the regulation as requiring the confiscation of property even in the event that the horse owner is found innocent of any wrongdoing on the ground that it is in the interest of the public confidence in the sport of horse racing and as a valid exercise of the police power removes this case from that class of cases where abstention is proper. At the same time, it raises substantial questions. Various states have disagreed on the validity of similar regulations. Compare Brennan v. Illinois Racing Board, 42 Ill.2d 352, 247 N.E.2d 881 (1969) with Sandstrom v. California Horse Racing Board, (Cal.App.), 183 P. 2d 285 (1947). In the opinion of this Court, the issues raised herein are no less important than those raised in Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

In view of the foregoing Memorandum Opinion, an appropriate order will be entered denying defendant's motion to dismiss and covening a three-judge court.

### ORDER

Plaintiff and intervenors have brought actions against the defendant under the Civil Rights Act, 42 United States Code, Section 1983 and have requested a three-judge court be convened under the provisions of 28 United States Code, Section 2281. A temporary restraining order was issued enjoining the Racing Administrator from distributing prizes won by the plaintiff and from enforcing the certain regulations of the Racing Board. The defendant has countered with a motion to dismiss for lack of jurisdiction. The parties have submitted exhaustive memoranda and the Court has this day filed its memorandum opinion.

The function of a single federal judge is limited "to determining whether the constitutional issue raised is substantial,

whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute". Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 1296, 8 L.Ed.2d 794 (1962).

The constitutional issues are, in the opinion of the Court, substantial. Sniadich v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). The complaint and intervening complaint allege a basis for equitable relief and the plaintiffs have fulfilled the requirements of the three-judge court statute. England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

In view of the foregoing, and for the reasons stated in the Memorandum Opinion entered today, it is therefore

Ordered, that defendant's motion to dismiss the complaint be, and hereby is denied; and it is further

Ordered, that defendant's motion to dissolve the temporary restraining order be, and hereby is denied; and it is further

Ordered, that defendant answer the complaint and intervening complaint within fifteen (15) days of the date of notification of this order; and it is further

Ordered, that a three-judge court be convened; and it is further

Ordered, that the defendant be, and hereby is restrained from enforcing the provisions of 15 RRPR 186–1104 and 186–1117, until the issues involved are resolved by the three-judge court; and it is further

Ordered, that the temporary restraining order hereinbefore issued on the 15th day of December, 1971 shall remain in full force and effect on condition that the bond filed by the plaintiff remain in full force and effect; and it is further

Ordered, that service of a copy of this order shall be made upon the defendants forthwith.