**Edwin EDELBERG et al.,
Plaintiffs-Appellants,**

v.

**The ILLINOIS RACING BOARD et al.,
Defendants-Appellees.**

**No. 75–1917.**

United States Court of Appeals,
Seventh Circuit.

Heard Feb. 18, 1976.

Decided Aug. 9, 1976.

---

Charles D. Stein, Michael P. Siavelis, Chicago, Ill., for plaintiffs-appellants.

William J. Scott, Atty. Gen., Ann T. Sheldon, Asst. Atty. Gen., Chicago, Ill., for defendants-appellees.

Before SWYGERT, TONE and BAUER, Circuit Judges.

BAUER, Circuit Judge.

The question presented by this appeal is whether a three judge court should be empaneled pursuant to 28 U.S.C. § 2281[1] to hear a challenge to the constitutionality of the Illinois Racing Board Rules which provide for the automatic withholding and redistribution of purse money when a winning horse is allegedly drugged before a race. The trial judge refused to convene a three judge court and dismissed the suit for failure to present a substantial federal question. We affirm.

Plaintiffs are racehorse owners, licensed annually by the Illinois Racing Board (the "Board"), who entered their horses in various races during 1974. Defendants are the individual members of the Board and the Board itself, sued as an agency of the state.[2] On March 1, 1975 the Board issued to each plaintiff a notice of

---

1. 28 U.S.C. § 2281 states:

   "An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefore is heard and determined by a district court of three judges under Section 2284 of this title."

2. The trial court correctly noted that the Illinois Racing Board as an agency of the state cannot be made a party-defendant in a § 1983 action. State agencies are not "persons" for purposes of the Civil Rights Act. *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Sykes v. State of California Department of Motor Vehicles*, 497 F.2d 197 (9th Cir. 1974); *Cheramie v. Tucker*, 493 F.2d 586 (5th Cir. 1974).

preliminary hearing charging that the Board's laboratory had found unauthorized drugs in the urine specimens of horses owned by the plaintiffs. Those horses had received prize money as a result of races won in 1974. The notice stated that, pursuant to Racing Board Rule 317c, the Board would hold hearings to determine whether the prize moneys won by these horses should be forfeited.

The plaintiffs filed a complaint for injunctive and declaratory relief under 42 U.S.C. § 1983 and 28 U.S.C. § 2281 alleging that Rule 317 was unconstitutional because it violated their constitutional right of due process. In addition, plaintiffs contended that the defendants, under the auspices of Rule 317c, were threatening to deprive them of money and property, in addition to damaging their good names, reputation, honor and integrity in the horse racing community.

Rule 317[3] provides that, upon determination that a positive laboratory report finding presence of drugs is accurate, all purse money won by the drugged horse shall be forfeited and redistributed among the remaining horses in the race. That rule is based on a concept of absolute liability regardless of fault. In other words, a condition precedent to receiving the purse money is that the winning horse be free of certain drugs.[4] There is no possible defense once the presence of an illegal drug is established. Whether the owners took every precaution against the possibility of the horse being drugged or whether the owners permitted the horses to be drugged is irrelevant in determining who receives the purse money. The rule provides for a hearing at which time the adequacy of the laboratory tests can be challenged. If the laboratory test survives technical challenge or if the report is not contested the purse money is forfeited and redistributed among the remaining horses in the race according to their order of finish.

## I. PLAINTIFFS HAVE NOT ESTABLISHED A DEPRIVATION OF PROCEDURAL DUE PROCESS.

Essentially plaintiffs have argued that the prize money is a property right and thus the Board cannot take away this property without some form of due process which necessitates a hearing and a finding of fault. In support of their argument plaintiffs cite *Suarez v. Aministrada Del Departe Hipico De Puerto Rico*, 354 F.Supp. 320 (D.Puerto Rico, 1972) and *Brennan v. Illinois Racing Board*, 42 Ill.2d 352, 247 N.E.2d 881 (1969).

*Suarez* involved a factual situation closely analogous to this case with one important difference: although the racing board rule was practically the same (*i. e.,* presence of drugs automatically disqualified the horse

---

3. The relevant sections of Rule 317 provide that:

"a. A report to the Stewards pursuant to Rule 315, [positive laboratory report] . . shall not by itself, be conclusive against the owner of the horse.

b. Immediately upon receipt of a report from the laboratory, the Stewards shall direct no purse money won by the horse in question, if it has not yet been distributed, shall be awarded pending a final determination by the Stewards of the accuracy of the laboratory's report. Immediately after receiving such a report, the Stewards shall notify the owner, trainer, and any other person having care or custody or control of the horse. The Stewards shall proceed to conduct an investigation and hearing with respect to the laboratory report as in case of any other alleged violation of a rule or statute.

c. In the event that the determination of the laboratory is not contested or in the event that, after a hearing, the Stewards determine that the laboratory determination is accurate, all purse money won by the horse in the race in question shall be forfeited and redistributed among the remaining horses in the race according to their order of finish. In the event that such purse money has been distributed prior to the Stewards' determination, such purse money shall be returned to the Stewards for redistribution as set forth in this Rule. No such forfeiture and redistribution shall affect the distribution of the parimutuel pool."

4. The Illinois Harness Racing Act Ill.Stat.Ann., ch. 8, § 37s.14 (Smith-Hurd 1975), provides in part:

"[T]he whole of such purse, prize, premium, stake, or reward shall be allotted in accordance with the terms and conditions of such race."

regardless of fault) the rule also called for an automatic suspension of the horse from racing for six months.

Similarly, in *Brennan* the horse trainer's license was revoked after the discovery of a drug in the race horse pursuant to a rule which made the trainer and other persons who cared for the horse absolutely liable for the condition of the horse regardless of the acts of third persons. In *Brennan* and *Suarez* the courts found that the owners' and trainers' rights of due process had been violated.

But those decisions were premised on the fact that the racing board was imposing a penalty without a hearing and without a determination of fault. In the instant case the Board is not attempting to suspend or punish plaintiffs for a violation of its rules. Rather, it is simply attempting to establish an objective and absolute condition that every winning horse must meet before its owner becomes legally entitled to the money in the purse. Furthermore the rule allows for a hearing at which time an owner can challenge a laboratory test finding that prevents his horse from meeting a condition precedent to being entitled to the purse money, *i. e.,* an absence of prohibited drugs in the horse at the time the race was run.

Therefore, Rule 317 does not deprive the appellants of a "property right" in the prize money. On the contrary, Rule 317 protects the property rights of the owners of the horses that do compete fairly, in accordance with the rules and regulations of horse racing. It allows the state to fulfill its responsibility to see that the prize money is awarded to the owner of the horse who fairly won the race.[5]

Plaintiff-appellant cites a series of recent Supreme Court decisions for the proposition that Rule 317 violates the constitutional guarantee of due process. We fail to see how those cases apply in this situation.

Clearly the due process clause of the Fourteenth Amendment protects against unreasonable and arbitrary state deprivation which imposes forfeitures, punishments or costs. And in analyzing the state conduct the constitutional protection " . . . is not to be avoided by the simple label a state chooses to fasten upon its conduct or its statute." *Giaccio v. Pennsylvania*, 382 U.S. 399, 402, 86 S.Ct. 518, 520, 15 L.Ed.2d 447 (1966). But is the State of Illinois in this case depriving plaintiffs by a forfeiture or inflicting a punishment? The rule can be read to create a condition precedent to insure a legitimate race. That is a construction the state urges upon us. But it is also an interpretation that is supported by reason and common sense. The trial court cogently summarized this view of the rule by stating:

> "Drugged horses destroy the required confidence in fair racing regardless of who perpetrates the crime. The rule thus is intended to encourage owners to be extremely vigilant in securing their horses against drugging. Moreover, the rule encourages owners to bring their horses to Illinois to race because they know that racing will be fairly administered here . . . it is this court's opinion that the fixing of responsibility for drugging is not a necessary pre-condition for the denial of prize money. There is sufficiently rational relationship between the rule as written and legitimate governmental purposes (fair contests and increased reve-

---

5. In addition the state has the duty to protect the property rights of all citizens who participate in horse racing. Justice Schaefer summarized this point in his dissent in *Brennan v. Illinois Racing Board*, 42 Ill.2d 352, 247 N.E.2d 881, 885 (1969), when he stated:

   "[H]orse racing accompanied by legalized gambling is peculiarly susceptible to fraudulent manipulation. One of the major problems to be guarded against is the artificial stimulation or depression of the horse. The betting public cannot protect itself against that kind of fraud, nor can its adverse effect, so far as the public is concerned, be remedied, for the parimutuel bets must be paid off immediately after each race. These conditions, in my opinion, justified the General Assembly in imposing upon the trainer the duty to take whatever steps are necessary during the brief but critical period immediately preceding a race, to insure that his horse is in proper condition."

nue) that the due process clause is not offended."[6]

We do not believe that the trial court's ruling was blind acceptance of the label or interpretation the state places on Rule 317. The judge's language indicates his own independent finding after a review of how the rule operates.

In *Lynch v. Household Finance Corp.*, 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), the Supreme Court held that the Civil Rights Act[7] protects property rights as well as personal rights.[8] Thus plaintiffs argue that the redistribution of the prize money among the drug-free horses is a violation of their civil rights because the rule arbitrarily infringes upon their property rights. Yet, under the Racing Board Rules, plaintiffs have no legal property right in the purse money until after a laboratory finding that their horse was not drugged. Even if the money has been distributed, the owner's right of possession is conditioned upon a determination that his horse won the race under the established rules.

■ Plaintiffs correctly cite *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), for the proposition that the Constitution limits state power to terminate an entitlement whether the entitlement is denominated a right or privilege. The state statute in *Bell* provided that the license of an uninsured motorist involved in an accident be suspended unless he posted security to cover the amount of damages claimed by the injured party. The administrative hearings conducted prior to the suspension excluded consideration of the motorist's fault or responsibility for the accident. The purpose of the state act was to obtain security from which to pay any judgment against the licensee resulting from the accident. The Supreme Court held that procedural due process required that evidence of fault or responsibility be considered.

■ However, in this case, the state does not seek to suspend the trainers' licenses nor bar the horse owner from racing. The state is merely creating a condition of the race. It is much the same as the state requiring that persons be of a particular age, or to have proper vision, to drive an automobile. If the State of Illinois determined that a driver failed to pass an eye test during a periodic exam, or that an applicant lied about his correct age, it could properly revoke the driver's license issued after a hearing. At the hearing the only proper questions would be: Does the applicant have sufficient vision? Or, in what year was the applicant born? The standard is objective. There is no need to make a fault determination because it adds nothing to the decision the state must make. Likewise, in the case of horse racing, the state must make a determination that a horse is drug-free before it is declared the winner. If a laboratory test shows presence of drugs, the rules provide for a hearing at which time the only relevant inquiry should be: Was the horse drugged? Was the laboratory report accurate? Once again a finding of fault adds nothing to the ultimate decision. Therefore, the *Bell* decision is applicable to this case only in the sense that

**6.** Page 3 of the unpublished Memorandum Opinion of the district court.

**7.** Plaintiff's complaint also alleged a violation of the Civil Rights Act, 42 U.S.C. § 1983, in addition to the due process claims. Paragraph 14 alleged that:
"Insofar as Rule 317c authorized the defendants to present charges, rule on those charges and impose punishment, consequently preventing plaintiffs from obtaining a fair tribunal, said Rule violates . . . U.S.C. § 1983."

**8.** In *Lynch* the Court stated at 405 U.S. 552, 92 S.Ct. 1122:

[T]he dichotomy between personal liberties and property rights is a false one. Property does not have rights. People have rights. The right to enjoy property without unlawful deprivation, no less than the right to travel, is in truth a 'personal' right, whether the 'property' in question be a welfare check, a home, or a savings account. In fact, a fundamental interdependence exists between the personal right to liberty and the personal right in property. Neither could have meaning without the other. That rights in property are basic civil rights has long been recognized."

it mandates a hearing[9] to determine whether plaintiffs' horses met the objective standard for winning the race. If an applicant for a driver's license pointed out that it was not his fault that he had poor vision the state still would not be justified in issuing a license. Nor would the state be justified in distributing prize money to the owner of a horse who could prove that it was not his fault that the horse was improperly drugged. In either situation the state law provides for an objective standard that all must meet regardless of fault.

## II. PLAINTIFFS' INTEREST IN REPUTATION IS NOT SUFFICIENT TO ESTABLISH A VIOLATION OF THE DUE PROCESS CLAUSE.

Plaintiffs have also argued that Rule 317 harms their reputation because it imputes to them illegal conduct which they have no opportunity to rebut or deny. *Schware v. Board of Examiners*, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1956), and *Konigsberg v. State Bar of California*, 353 U.S. 252, 77 S.Ct. 722, 1 L.Ed.2d 810 (1956), cited by plaintiffs stand for the principle that a citizen should not be considered disloyal or of bad character simply because of his associations unless there is evidence to support such a finding. But in this case the state is not denying the owners a right to race in the future. Nor is the state attempting a ostracize the owners. *Schware* and *Konigsberg* presented issues quite distinct from the position in which plaintiffs are placed

by the state conduct. Admittedly, a horse owner's reputation can be damaged by a finding that his horse was drugged. However, as the Supreme Court recently explained in *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160–61, 47 L.Ed.2d 405 (1975):

"[T]he words 'liberty' and 'property' as used in the Fourteenth Amendment do not in terms single out reputation as a candidate for special protection over and above interests that may be protected by state law. While we have in a number of our prior cases pointed out the frequently drastic effect of the 'stigma' which may result from defamation by the government in a variety of contexts, this line of cases does not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause.

. . .

■ *Paul v. Davis, supra,* involved a case where state officials distributed plaintiff's picture on a flyer of active shoplifters to local merchants. The state official placed plaintiff's pictures on the flyer because he had previously been arrested for shoplifting. However, before the circulation of the flyer the charges against the plaintiff were dropped. Certainly the factual situation in *Paul v. Davis*[10] is much more egregious than the situation in the present case where

9. There is no doubt in light of recent decisions by the Supreme Court that due process requires a prior meaningful hearing before an individual is deprived of any significant property interest, except in emergency or extraordinary situations. *Fuentes v. Shevin*, 407 U.S. 67, 90–91, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Bell v. Burson, supra; Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *Goldberg v. Kelly*, 397 U.S. 254, 266, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

10. Even under the view of the dissent by Justice Brennan in *Paul v. Davis*, we think plaintiffs have failed to establish a claim for damage to reputation. Justice Brennan states in footnote 9:

"Today's holding places a vast and arbitrary power in the hands of federal and state officials. . . . The hardships resulting

from this official stigmatization—loss of employment and educational opportunities, creation of impediments to professional licensing, and the imposition of general obstacles to the right of all free men to the pursuit of happiness—will often be as severe as actual incarceration, and the Court today invites and condones such lawless action by those who wish to inflict punishment without compliance with procedural safeguards constitutionally required by the Criminal Justice System."

Judging this instant case even under the standard of the dissent, which comments on the impact of the majority decision, we note that the Racing Board's action does not impede plaintiffs' licenses to race, or deprive them of other opportunities in the horse racing field.

the state took no affirmative action to brand the plaintiffs as criminals. Nevertheless, the Court held that there was no federal action for damage to reputation under the Due Process Clause. Nor do we see any federal basis upon which to entertain plaintiffs' claim that the acts of the Racing Board wrongfully damaged their reputations.

## III. THE PRESUMPTION CREATED BY RULE 317 IS NOT ARBITRARY, IRRATIONAL, OR UNREASONABLE.

■ Another argument raised by plaintiffs is that Rule 317 violates the Due Process Clause since it creates an irrebuttable conclusion or. presumption. The state defendants have not denied the fact that such a conclusion or presumption is created when a positive laboratory test is found. However, the recent Supreme Court decisions have taught us that a presumption or conclusion that arises out of a state statute is improper only when it is irrational, arbitrary or unreasonable.

■ *Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) dealt with a school board rule requiring a pregnant school teacher to take a mandatory maternity leave thereby creating an irrebuttable presumption of physical incompetency to teach while pregnant. The Court found this created-presumption to be irrational, arbitrary and unreasonable in light of the fact that an individual teacher's capacity or competency might not be affected by pregnancy according to medical evidence. *LaFleur* followed *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed. 63 (1973) (a Connecticut statute mandating an irrebuttable presumption of nonresidency for purposes of qualifying for reduced tuition rates), and *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (Illinois statute containing irrebuttable presumption that unmarried fathers are incompetent to raise their children), in establishing that irrebuttable presumptions have long been disfavored under the Due Process Clauses of the Fifth and Fourteenth Amendments. Assuming, *arguendo,* that Rule 317 creates an irrebuttable and conclusive presumption we must review it with disfavor. In so doing, we still believe the rule is permissible because it is not based upon an arbitrary, irrational or unreasonable standard. Unlike *LaFleur, Vlandis,* and *Stanley, supra,* the presumption created (i. e., that drugged horses substantially affect performance in a race) is a rational, reasonable, and, we believe, permissible conclusion. In their argument plaintiffs have ignored a key point: that the presumption created must be arbitrary or unreasonable to be considered impermissible.

## IV. THE HEARING PROVIDED BY RULE 317c COMPLIES WITH DUE PROCESS.

The district court ruled that the hearing under Rule 317c was not an empty formality in that it gave the interested party the opportunity to challenge the technical accuracy of the laboratory report. That ruling was based upon the premise that personal responsibility for drugging the horse is irrelevant. Plaintiffs attack the rule as being vague, indefinite, lacking in standards, and providing a hearing which is meaningless.

■ Rule 317a states that a laboratory report "shall not by itself be conclusive against the owner of the horse." Therefore, the horse owners have the opportunity to present their own laboratory report as well as an opportunity to object to the state's laboratory report. Standards do exist since the owners can challenge the technical sufficiency of the report,[11] cross-examine the technician who prepared the report, present expert opinion evidence, and question the chain of evidence. Assuming that the hearing officer is a detached and neutral decision-maker, and that the owners are allowed to challenge the report as outlined above, the hearing contemplated un-

---

11. See *Kentucky State Racing Commission v. Fuller,* 481 S.W.2d 298 (Ky.1972) for a discussion of the type of evidence that may be used to refute a positive laboratory test.

der the rule is proper. See *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

## V. THE DISTRICT COURT JUDGE DID NOT ERR IN REFUSING TO CONVENE A THREE JUDGE COURT.

This Court has jurisdiction to review the action of a single district judge in dismissing a complaint instead of taking steps to convene a three judge court pursuant to 28 U.S.C. § 2281. *Idlewild Bon Voyage Liquor Corp. v. Epstein,* 370 U.S. 713, 715, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962); *Holiday Magic, Inc. v. Warren,* 497 F.2d 687, 689 (1974), and the cases cited therein. As we said in *Holiday Magic* at 689:

> "Our function is to review the allegations of the complaint to determine whether a substantial federal question is presented and whether there is a question fairly open to debate entitling plaintiffs to the three-judge relief requested."

On the issue of whether a substantial federal question is presented, plaintiffs rely on the Supreme Court decision in *Goosby v. Osser,* 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973). The Court of Appeals had affirmed dismissal of the complaint on the ground that the constitutional claims were wholly insubstantial, holding that the district court was not required to convene a three judge court under the authority of *Bailey v. Patterson,* 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962). In reversing, the Supreme Court stated that claims are constitutionally insubstantial only if prior decisions by the Supreme Court inescapably render the claim frivolous.

We think this case meets the *Goosby* test. That no other litigant has heretofore raised these precise issues is explained by their lack of merit. A three judge court need not be convened when the arguments of the plaintiff are frivolous.[12]

12. Compare Judge Friendly's observation in *Green v. Board of Elections,* 2 Cir., 380 F.2d 445, 449 (1967):

> "When the single district judge has denied the injunction and three circuit judges are convinced that the pleadings show the claim

Accordingly, the judgment of the trial court is affirmed.

AFFIRMED.

to lack merit, they accomplish little save *elegantia juris* by reversing because they are not completely certain that the lack was so obvious as to have warranted dismissal by one judge rather than three. . . . "