**Phillip J. McNELLIS as Trustee of Donald S. Potter, Bankrupt et al., Plaintiffs-Appellants,**

v.

**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF ROCHESTER, NEW YORK, Defendant-Appellee.**

**No. 357, Docket 30327.**

United States Court of Appeals
Second Circuit.

Argued May 2, 1966.

Decided July 27, 1966.

252

Laurence Sovik, Syracuse, N. Y. (Smith, Sovik, Terry, Kendrick, McAuliffe & Schwarzer, Syracuse, N. Y., on the brief), for plaintiffs-appellants.

Carl Angeloff, Rochester, N. Y. (Robinson, Williams, Brown, Robinson & Angeloff, Frank Aloi, Rochester, N. Y., on the brief), for defendant-appellee.

Before LUMBARD, Chief Judge, and MOORE and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

Appellants, two trustees in bankruptcy, appeal from an order of the District Court for the Northern District of New York, which granted appellee's motion for summary judgment and dismissed the complaint. In a memorandum opinion, Judge Brennan held that the principles of *res judicata* compelled this result. For reasons set forth below, we reverse.

In November 1963, appellants sued defendant-appellee First Federal Savings and Loan Association of Rochester ("First Federal") in the New York Supreme Court, Onondaga County, in a two-count complaint. The first count alleged that plaintiffs were the trustees in bankruptcy of Randolph House Motor Hotel Corp. ("Randolph"), Donald S. Potter, Jackson M. Potter, and Potter Securities Corporation ("Potter Corp."), all adjudicated bankrupt in June 1963; that at all relevant times Donald Potter was insolvent and owned all the stock of Randolph, which was also insolvent; that Potter Corp. was a "dummy" organized by the Potters to hold title to

certain properties for Donald Potter in order to conceal usurious transactions; that title to certain premises passed without consideration back and forth from Donald Potter to Potter Corp. several times and finally from that corporation to Randolph; that Donald Potter paid for the construction of a motor hotel on the premises; that a substantial portion of the materials and services for the construction was furnished by unsecured creditors of Donald Potter and Randolph; that on or about April 27, 1962, First Federal entered into a mortgage commitment agreement with Potter Corp. on behalf of Donald Potter, under which Donald Potter paid First Federal $62,000 on April 27, 1962 and again on June 21, 1962; and that each payment, although characterized as a "mortgage origination fee," was actually intended to be interest on mortgage indebtedness in excess of that authorized by the New York General Business Law, McKinney's Consol. Laws, c. 20 and federal statutes relating to banks and banking. The second count of the complaint alleged that the two payments of $62,000 were fraudulent dispositions of the bankrupts' property; that the payments were made without fair consideration and in violation of the New York Debtor and Creditor Law, McKinney's Consol. Laws, c. 12; and that they were made when defendant knew or should have known the bankrupts were insolvent and unable to pay their liabilities as they would mature. The complaint sought judgment for $248,000, with interest.[1]

Both sides moved for summary judgment in the state court action; plaintiffs' motion was later withdrawn. While the motions were pending, plaintiffs moved for permission to file and serve a supplemental complaint as "a third separate and distinct cause of action." After incorporating the original complaint, the supplemental complaint alleged that Donald Potter paid a total of $55,144 to First Federal on the mortgage ($3,100 on August 2, 1962, $26,022 on September 6, 1962, and $26,022 on September 21, 1962); that these payments were in violation of New York Debtor and Creditor Law, §§ 273–276, New York Banking Law, McKinney's Consol. Laws, c. 2, § 380–e, and section 67d(2) of the Bankruptcy Act; and that defendant knew at the time of the payments that the bankrupts were insolvent and unable to pay their liabilities. The additional relief prayed for was a judgment of $110,288[2] and attorneys' fees.

In May 1964, while these motions were pending in the state court, appellants commenced the action in the court below. The federal complaint alleged virtually everything in the state complaints and a few more details of the transactions in question were provided. The complaint alleged that the two $62,000 payments represented illegal interest in violation of New York Banking Law § 380–e and Article 10 of the New York Debtor and Creditor Law, and that the second $62,000 payment and the three subsequent payments totalling $55,144 were in violation of section 67d of the Bankruptcy Act and Article 10 of the New York Debtor and Creditor Law. The complaint sought double damages ($248,000) on the claims arising out of the two $62,000 payments and single damages ($55,144) on the later three payments.

First Federal moved below for summary judgment or a stay of proceedings on the ground that a state court action for the same relief was pending; Judge Brennan granted a stay pending determination of the state action. In June 1964, First Federal's motion for summary judgment in the New York Supreme Court was granted by Justice Ringrose. The judge viewed the state court action as one to recover $248,000 for violation of the usury statutes, requiring a piercing of the corporate veil to overcome the exception for corporate borrowers. He held that there had to be

---

1. Plaintiffs sought double damages apparently under New York Banking Law, § 380–e.

2. See note 1, supra.

proof that there was a loan in fact to an individual (Donald Potter), which the parties might wish to conceal, but that the loan had actually been made to Randolph, which also paid the "mortgage origination fee" of $124,000. He stated that the documentary proof established that no payments had been made by Donald Potter to defendant First Federal. For a number of reasons which need not concern us here, the state court refused to pierce the corporate veil to hold usurious the two payments of $62,000. The opinion focussed on those two payments, which, as indicated above, were the subject of the two counts of the original state court complaint; the opinion did not mention the three later payments, totalling $55,144, which were the subject of the proposed supplemental state court complaint. At the end of the opinion, Justice Ringrose alluded to six pending motions in the case and denied them all without discussion. He stated, *inter alia,*

> In view of the decision above announced, the following motions concurrently or subsequently argued or submitted by the plaintiffs in this action are denied without costs:
>
> \*    \*    \*    \*    \*    \*
>
> SIXTH: Permitting plaintiffs to file and serve a supplemental complaint.

An appeal was taken from this decision but was later dismissed in December 1965.[3]

At this point, First Federal understandably renewed its motion in the court below for summary judgment. Apparently, plaintiffs did not dispute below that the state court decision barred their federal action insofar as it sought relief because of a usurious "origination fee." Plaintiffs did insist, however, that the claim for $55,144 based on the three subsequent payments on the mortgage in August and September 1962 was not barred. Judge Brennan held that since the state court determined that usury rules were inapplicable, the August and September payments made on a valid mortgage could hardly be invalidated. Judge Brennan also relied on the state court denial of permission to file the supplemental complaint, and the identity between the proposed third cause of action contained therein and the relevant portion of the instant complaint. He concluded that "the principle of res judicata" required granting defendant's motion for summary judgment.

■    Appellants' only contention here is that the court misapplied the principles of *res judicata.*[4] What those principles are in general is not difficult to state; applying them to specific situations is sometimes another matter. Briefly, where a judgment has been rendered in an action between two parties for a sum of money and there is subsequently another action between the same parties, the first judgment has varying conclusive effect. If the second action is based upon the same cause of action as the first, the prior judgment is conclusive as to all matters which were litigated or might have been litigated in the first action. However, if the second action is based upon a different cause of action, the prior judgment is conclusive between the parties only as to matters actually litigated and determined by the first judgment; that judgment is not conclusive as to matters which might have been, but which were not, litigated and determined in the prior action.

---

3. First Federal's motion to dismiss the appeal for failure of appellants to file and serve the papers on appeal was granted by the Appellate Division of the Supreme Court, Fourth Department on December 2, 1965.

4. Appellee claims that this court must look to state law to determine the effect of the prior judgment; appellants do not address themselves to this point.

Cf. Comment, Res Judicata in the Federal Courts: Application of Federal or State Law: Possible Differences Between the Two, 51 Cornell L.Q. 96 (1965). In any event, we do not feel that the state and federal law differ sufficiently in the area crucial in this case to require further exploration here of the choice of law problem.

Cromwell v. County of Sac, 94 U.S. 351, 352–353, 24 L.Ed. 195 (1877); Restatement, Judgments, 158–59 (1942). The obvious beginning for an inquiry into *res judicata* is a determination of what was claimed and decided in the first action. The state court complaint alleged that payments of $62,000, in April and June 1962, represented usurious interest (count one) and were a fraud on creditors (count two). The state court held that a corporate-borrower could not avail itself of usury rules. The only reference to the fraudulent transfer aspects of the complaint was that Randolph was solvent on June 21, 1962 (the date of the second $62,000 payment and of transfer of title to Randolph from Potter Corp.).[5] The court also denied without discussion permission to file a supplemental complaint substantially identical to the portion involved here of the complaint below.

█ Putting the supplemental complaint to one side for the moment, we cannot see how the dismissal of counts one and two of the state court complaint, based on payments in April and June 1962, bars the action here to recover other types of payments in August and September. Although analysis is rendered somewhat difficult by the jumble of theories and allegations in the complaints and briefs, it is quite clear that the federal complaint is now reduced only to recovery of a fraudulent transfer. In fact, plaintiffs use to their advantage the state court determination that Donald Potter was not the "real borrower." They assert that if this is so, then payments by Potter of $55,144 on a mortgage incurred by someone else (Randolph) were without consideration; since the payments were made within one year prior to bankruptcy at a time when he was insolvent, they were fraudulent transfers. The claim that appellants now press has nothing to do with usury or the "origination fee" and the fact that the later three payments may

have represented interest is irrelevant. Therefore, the action now presented in its truncated form in the federal court is clearly a different cause of action from the action presented in count one of the original state complaint. It is true that count two of that complaint did contain a theory of fraudulent transfer to justify recovery of the $62,000 payments. But this theory depended upon establishing insolvency on April 27 or on June 21, 1962—the dates of the two payments—and concerned only these two payments. A cause of action for a fraudulent transfer in June is not the same as a cause of action for a fraudulent transfer in August or September. Restatement, Judgments § 61, comment *c* (1942). Appellee emphasizes that all payments grew out of the same mortgage and that the mortgage, as pointed out by the court below, has been held valid. However, appellants are not now relitigating the legality of the mortgage; they assume it is valid, but question the propriety of payments on it by an alleged stranger to the transaction, Donald Potter. We conclude that the cause of action now pressed is not the same as that originally presented to the state court.

We do not view any of the cases cited by appellee on determining what is the same "cause of action" as compelling a contrary result. Cf. Developments in the Law—Res Judicata, 65 Harv.L.Rev. 818, 824–25 (1952). Williamson v. Columbia Gas & Elec. Corp., 186 F.2d 464 (3d Cir. 1950), cert. denied, 341 U.S. 921, 71 S.Ct. 743, 95 L.Ed. 1355 (1951), involved two civil antitrust suits, one based upon the Sherman Act, the other on the Clayton Act. The court concluded that the same operative facts were present in each and that different theories of recovery did not necessarily mean different causes of action, a proposition we do not dispute. Of course, the issue then is what are the "operative facts"; here, unlike *Williamson*, significantly different evidence is required, see Restatement, Judgments §

5. The court also noted that apparently at the same date a contract to sell the property for $5,250,000 was in existence and the encumbering mortgages did not exceed $5,057,142.50.

61 (1942), different time periods are involved and different amounts are sought. Kaufman v. Shoenberg, 154 F.Supp. 64 (D.Del.1954), is similarly distinguishable. Smith v. Kirkpatrick, 305 N.Y. 66, 111 N.E.2d 209 (1953), and Schuylkill Fuel Corp. v. B. & C. Nieberg Realty Corp., 250 N.Y. 304, 165 N.E. 456 (1929), if anything, support the conclusion we reach here. In the latter case, the court said at 250 N.Y. 308, at 165 N.E. 458: "The decisive test is this, whether the substance of the rights or interests established in the first action will be destroyed or impaired by the prosecution of the second." As indicated above, the state action here determined that the two $62,000 payments could not be recovered by the trustees; success in the action now before us could not "destroy or impair" that determination. Appellee's other cases similarly do not require us to hold that *res judicata* bars the trustees.

The present action might still be barred, however, if it could be fairly said that the issues still present had been litigated and decided in the state court action, but such is not the case. Appellants did claim in the state court that Donald Potter made the two $62,000 payments, and the state court held he did not. But that court did not have before it in the original state complaint the question whether Potter individually made the August and September payments. While Justice Ringrose stated that "no payments were made at any time by Donald S. Potter to the defendant," it is obvious that he was focussing only on payments up to June 21, 1962.

■■■ Therefore, since the cause of action still pressed by the trustees in this court is a different one from the cause of action originally presented to the state court in counts one and two of the state court complaint and since the key issues

now presented were not there litigated and decided, normally principles of *res judicata* would not bar the action. However, there must still be considered the effect of the ambiguous disposition in the state court of the proposed supplemental complaint; i. e., was there a judgment on the merits of that complaint sufficient to justify application of *res judicata* rules. If that proposed third cause of action had been included in the original state court complaint and defendant's motion for summary judgment had also been addressed to it, it may be conceded that plaintiffs would now be barred; identity both of parties and cause of action would present a classic case for applying the salutary policies behind the *res judicata* doctrine. However, the count was not included in the original complaint; according to the trustees, the reason it was not was that they did not find out about the August and September payments until after the state complaint had been filed.[6] Therefore, count three was never filed and technically was not before the state court; moreover, granting that this formality should not control, it is also quite clear that count three was never before the court in a realistic sense either. Plaintiffs' motion to file a supplemental pleading was brought under N.Y.Civ. Prac.Law & R. 3025(b), which provides that "leave shall be freely given." Despite this statement of a liberal policy, the cursory reason given for denial of leave was "in view of the decision above announced." That decision did not discuss the fraudulent conveyance theory of the first complaint and focussed almost entirely on the usury aspects of that complaint; moreover, it dealt only with the issues arising out of the two payments of $62,000. We also note that N.Y.Civ. Prac.Law & R. 5013 provides:

A judgment dismissing a cause of action before the close of the propo-

---

6. Phillip J. McNellis was appointed bankruptcy trustee of the estates of Donald S. Potter and Potter Corp. on June 25, 1963. The state court suit was brought on November 21, 1963; the motion to file a supplemental complaint was brought on February 26, 1964.

nent's evidence is not a dismissal on the merits unless it specifies otherwise, but a judgment dismissing a cause of action after the close of the proponent's evidence is a dismissal on the merits unless it specifies otherwise.

Since no motion for summary judgment with respect to the cause of action pleaded in the supplemental complaint was ever brought, there was no evidence at all adduced in plaintiffs' favor. And, as the proposed third cause of action was not even "dismissed," this would seem to be an *a fortiori* case for concluding that disposal of the supplemental complaint was not on the merits. Finally, although the principles of *res judicata* should not be frugally applied, cf. United States v. Munsingwear, Inc., 340 U.S. 36, 38, 71 S.Ct. 104, 95 L.Ed. 36 (1950), a reasonable doubt as to what was decided in the first action should preclude the drastic remedy of foreclosing a party from litigating an essential issue.[7] Cf. Cleary, Res Judicata Reexamined, 57 Yale L.J. 339 (1948). Under these circumstances, while it is conceivable that in denying leave to file the supplemental complaint, Justice Ringrose decided on the merits that the three payments in August and September 1962 were not fraudulent transfers, the proposition is not persuasive.[8]

In summary, we conclude that there is no *res judicata* bar to the trustees' action on grounds other than usury based on the three payments which totalled $55,144.

Judgment reversed.

7. This would dispose of appellee's contention that Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947), controls here; the case is also inapposite because we do not have here, in any event, the closing of the door by the state to an entire class of suits.

8. The burden of showing the meaning of the former adjudication is on the party asserting the bar of *res judicata*. Hyslop v. United States, 261 F.2d 786 (8th Cir. 1958); Peckham v. Family Loan Co., 196 F.2d 838 (5th Cir. 1952); J. B. Sparrow Theatrical Amusement Co. v. Mack, 195 F. 474 (2d Cir. 1912).