Glenn W. BRICKER, M.D., Plaintiff,
Appellant,

v.

Henry D. CRANE, Jr., M.D., et al.,
Defendants, Appellees.

No. 72–1154.

United States Court of Appeals,
First Circuit.

Heard Sept. 6, 1972.

Decided Nov. 7, 1972.

Glenn W. Bricker, M.D., pro. se.

Eugene M. Van Loan, III, Manchester, N. H., Martin L. Gross, Concord, N. H., W. Wright Danenbarger, Manchester, N. H., and Frederic K. Upton, Concord, N. H., with whom Sulloway, Hollis, Godfrey & Soden, Concord, N. H., Devine, Millimet, Stahl & Branch, Sheehan, Phinney, Bass & Green, Paul E. Nourie, Wiggin, Nourie, Sundeen, Pingree & Bigg, Wadleigh, Starr, Peters, Dunn & Kohls, Manchester, N. H., Upton, Sanders & Upton, Concord, N. H., Peter V. Millham, and Wescott, Millham & Dyer, Laconia, N. H., were on briefs, for defendants-appellees.

Before COFFIN, Chief Judge, Mc-ENTEE, Circuit Judge, HAMLEY,* Senior Circuit Judge.

* Of the Ninth Circuit, sitting by designation.

McENTEE, Circuit Judge.

This is an appeal from the district court's dismissal of an action brought under the Civil Rights Act of 1871. Appellant, Dr. Glenn W. Bricker, is a physician duly licensed to practice medicine in the State of New Hampshire. In August 1970, he received notification that the Credentials Committee of defendant Sceva Speare Memorial Hospital had recommended that he not be reappointed to the hospital's medical staff. Following receipt of this notification, Dr. Bricker made extensive efforts to obtain the minutes of the meeting at which this action had been taken, as well as a specification of the charges against him. Although these efforts were unavailing, he was afforded an appeal procedure which included a personal appearance before the hospital's Credentials and Joint Conference Committees. Upon being finally informed that he would not be reappointed to the medical staff, Dr. Bricker commenced an action for injunctive relief against the hospital in New Hampshire Superior Court.

In essence, Dr. Bricker alleged that his nonreappointment was due to his activities as a specialist in the field of legal medicine, which sometimes entailed testifying against other doctors in medical malpractice actions. Along with other allegations not relevant here, appellant claimed that the hospital's failure to provide him with a specification of charges violated his right not to be deprived of property without due process of law and that his nonreappointment to the hospital staff was arbitrary, capricious and unreasonable. In its decision of May 17, 1971, the Grafton County Superior Court ruled that Sceva Speare was a private hospital and that its bylaws did not require that Bricker be given a written specification of the charges against him. The court further held that Bricker had been a disruptive influence at the hospital, that his medico-legal activities had not played a substantial role in his nonreappointment and that the hospital's actions were therefore neither arbitrary nor unreasonable. The superior court's findings of fact and rulings of law were affirmed by the Supreme Court of New Hampshire which specifically held that "the acceptance of federal and town funds . . . has not changed the private character of defendant hospital." Bricker v. Sceva Speare Memorial Hospital, N.H., 281 A. 2d 589, 592, cert. denied, 404 U.S. 995, 92 S.Ct. 535, 30 L.Ed.2d 547 (1971).

After the denial of his petition for a writ of certiorari, Bricker commenced the present action in the district court. In addition to the hospital, he named as defendants certain members of the Sceva Speare Medical Staff and Executive Committee, a number of insurance companies and three attorneys who represented several of the other defendants. His complaint alleged the existence of a broad-based conspiracy to deprive him of his capacity to practice medicine, solely because of his testimony in malpractice cases, in violation of the first, fifth and fourteenth amendments to the United States Constitution, and the Civil Rights Act of 1871.[1] The complaint further alleged that Bricker's nonreappointment to the Sceva Speare staff was a result of this conspiracy,[2] that he had not been

___

1. Although the complaint did not specify any particular section of this act, the district court assumed reliance on 42 U.S.C. §§ 1983 and 1985(3).

2. Other overt acts allegedly committed by the defendants in furtherance of the conspiracy include (1) causing a license revocation proceeding against the appellant to be filed with the Board of Registration in Medicine for the State of New Hampshire (the proceeding has terminated in Bricker's favor); (2) causing material alterations in records and suborning perjury in proceedings before state courts and quasi-judicial boards; (3) instituting a double standard at the hospital relative to regulations imposed; and (4) instituting a requirement that all members of the hospital staff carry malpractice insurance and then threatening to cancel and cancelling appellant's policy solely because of his testimony in a medical malpractice case. The complaint also

informed of the charges against him prior to his exclusion from the hospital and that the hospital received certain monies from the state and federal governments under the Medicare Program and the Hill-Burton Act. Stripping this complaint to its "federal essentials," the district court construed it as alleging a deprivation of due process through the defendant hospital's refusal to provide appellant with the requested specification of charges. While recognizing its jurisdiction under 28 U.S.C. § 1343, the court dismissed the complaint as to all the defendants on various grounds of res judicata, collateral estoppel and failure to state a cause of action. We affirm the decision of the district court.

Our consideration of this appeal must begin with the doctrine of collateral estoppel.[3] Insofar as appellant relies on 42 U.S.C. § 1983,[4] he must demonstrate that, in denying him access to the facilities of Sceva Speare Memorial Hospital, the defendants acted under color of state law. Adickes v. S. H. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). It is unnecessary for us to decide whether the reception of funds under the Hill-Burton Act and other government programs was sufficient to imbue the hospital with state action,[5] since that issue has been conclusively determined against the appellant in the state courts.

In P. I. Enterprises, Inc. v. Cataldo, 457 F.2d 1012 (1st Cir. 1972), this court held that the effects of collateral estoppel cannot be avoided by recasting an adjudicated issue in the form of an action under the Civil Rights Act. We noted in that decision the well settled principle that state courts are fully empowered to decide federal claims and that "[a] state court decision on constitutional issues is res judicata to the identical suit brought in federal court." Id. at 1014. We reiterate that the Civil Rights Act is not a vehicle for collateral attack upon final state court judgments, Coogan v. Cincinnati Bar Association, 431 F.2d 1209 (6th Cir. 1970); Rhodes v. Meyer, 334 F.2d 709, 716 (8th Cir.), cert. denied, 379 U.S. 915, 85 S.Ct. 263, 13 L.Ed.2d 186 (1964), and that a writ of certiorari to the United States Supreme Court is the only method by which such a decision may be reviewed. See Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149,

alleges that the defendants introduced false testimony at a trial in which appellant appeared as an expert medical witness in order to discredit his previous testimony.

3. Since "[t]he application of collateral estoppel in federal courts is no longer grounded upon the mechanical requirement of mutuality," P. I. Enterprises, Inc. v. Cataldo, 457 F.2d 1012, 1015 (1st Cir. 1972), the defense is available to all parties in the present action. See Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). Even if it could be argued that the insurance companies and defendants-attorneys Soden and Millham were not so related to the hospital as to be entitled to invoke the doctrine, we hold in any case that since there were no allegations of their participation in the challenged denial of reappointment and no other allegations coloring their actions with state law, no cause of action under § 1983 was made out as to those defendants.

4. Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

5. Compare Sams v. Ohio Valley General Hospital Association, 413 F.2d 826 (4th Cir. 1969); Smith v. Hampton Training School for Nurses, 360 F.2d 577 (4th Cir. 1966); Citta v. Delaware Valley Hospital, 313 F.Supp. 301 (E.D.Pa.1970) with Place v. Shepherd, 446 F.2d 1239 (6th Cir. 1971); Mulvihill v. Julia L. Butterfield Memorial Hospital, 329 F. Supp. 1020 (S.D.N.Y.1971); Wood v. Hogan, 215 F.Supp. 53 (W.D.Va.1963).

**1232**

68 L.Ed. 362 (1923). In the present case, appellant unsuccessfully sought such review after voluntarily litigating his federal claims in state court. Understandably disappointed with the outcome of this earlier litigation, he now seeks a happier result in a federal forum. But he is not entitled to an "encore." [6] Angel v. Bullington, 330 U. S. 183, 191, 67 S.Ct. 657, 91 L.Ed. 832 (1947).

Appellant argues, however, that whatever the effects of collateral estoppel, he has a subsisting cause of action under 42 U.S.C. § 1985(3).[7] Appellant bases this argument on the recent case of Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), in which the Supreme Court held that § 1985(3) does not require state action but reaches private conspiracies aimed at the discriminatory deprivation of equal rights under the law. We note the holding of at least one federal court that, when the object of such a conspiracy is the deprivation of rights secured by the fourteenth amendment, a state involvement requirement survives *Griffin*. *See* Dombrowski v. Dowling, 459 F.2d 190 (7th Cir. 1972). We need not reach this issue, however, since appellant has failed to meet the minimum requirements for stating a cause of action under this section.

In Griffin v. Breckenridge, *supra,* the Court recognized "[t]he constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law." *Id.* at 102, 91 S.Ct. at 1798. In order to avoid these difficulties, the Court construed the statute to require, as an element of the cause of action, a showing of some invidiously discriminatory motivation.

"The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action." *Id.* (Citations omitted.)

In his original complaint before the district court, Bricker did not claim that he was the victim of any class-based discrimination. Following the dismissal of his action, he sought to amend the complaint to include an allegation that he was a member of a class of physicians who had been discriminated against because of their testimony in malpractice cases. While the court denied his motion for leave to amend, this additional allegation would not, in any event, suffice to state a cause of action under § 1985(3).

We recognize, of course, that we are generally required to treat the allega-

6. Appellant seeks to distinguish our decision in *P. I. Enterprises* by arguing that his constitutional claim was not, in fact, decided by the state courts. He reaches this somewhat startling conclusion by characterizing the New Hampshire courts' determination of the state action question as decisive only of a preliminary jurisdictional issue. It is, of course, crystal clear that a due process violation can never exist in the absence of state action, and appellant's contention is therefore frivolous.

7. "If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protec-

tion of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

tions of a complaint as true for purposes of a motion to dismiss. In the instant case, however, appellant has done no more than flatly assert his membership in a novel class which is neither readily recognizable nor among those traditionally protected by the Civil Rights Act. He has alleged no facts supporting the existence of such a class and admitted at oral argument that he might be the only class-member in New Hampshire. Under these circumstances, we hold that appellant has not sufficiently alleged class-based discrimination to state a cause of action under § 1985(3). See Jacobson v. Industrial Foundation of Permian Basin, 456 F.2d 258 (5th Cir. 1972).

Appellant also makes fleeting reference in his brief to 42 U.S.C. § 1985(2).[8] At no point in his complaint, or even in his motions for leave to amend, did Bricker specifically rely upon that section. He is therefore precluded from asserting it for the first time on appeal since we will not "[o]rdinarily . . . reverse a judgment of the district court on a ground not urged upon it or considered." Bird v. United States, 241 F.2d 516, 520 (1st Cir. 1957).

Appellant's claim for relief under 42 U.S.C. § 1981 may be similarly disposed of. That section was not a part of the Civil Rights Act of 1871,[9] and was therefore not raised by even the general and conclusory allegations of the complaint.

Finally, appellant attacks the court's denial of his several motions for leave to amend his complaint as an abuse of discretion. Our reading of his proposed amendments, however, convinces us that nothing contained therein could cure the deficiencies of his original complaint or overcome the effects of collateral estoppel. Under these circumstances, the district court clearly did not abuse its discretion by refusing to allow the requested amendments. See Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); 3 J. Moore, Federal Practice ¶15.10, at 958–59 (2d ed. 1968).

Affirmed.

---

8. Section 1985(2) creates a cause of action under the following circumstances:
   "If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws; . . . ."

9. See Act of May 31, 1870, ch. 114, § 16, 16 Stat. 144.