**Ralph KAUFMAN**

v.

**SOMERS BOARD OF EDUCATION.**

**Civ. No. H–56.**

United States District Court,
D. Connecticut.

Nov. 19, 1973.

Paul S. Sherbacow, Hartford, Conn., for plaintiff.

Robert J. Cathcart, Shipman & Goodwin, Hartford, Conn., for defendant.

## RULING ON MOTION TO DISMISS

BLUMENFELD, Chief Judge.

Plaintiff, a tenured teacher of physical education employed by defendant, received notice in February, 1971, that defendant was considering termination of his contract. Plaintiff requested a hearing and a statement of the reasons for the proposed termination of his contract. After a hearing which took place on four different days in March and April of 1971, plaintiff received notice of termination of his contract at the end of the school year, for the six reasons previously given to him plus a seventh reason: "other due and sufficient cause."

Connecticut has prescribed by statute the exclusive grounds for termination of a tenured teacher, i. e., a teacher in his fourth or subsequent year of continuous employment by a board of education, and the procedure which must be followed by a school board in effecting such a termination. Conn.Gen.Stats. § 10–151. This statutory scheme provides for an appeal to the local court of common pleas by a teacher aggrieved by a decision to terminate his contract. Conn.Gen.Stats. § 10–151(f). When such an appeal is pursued, the court reviews the record compiled by the school board, and may in its discretion hear additional evidence. The decision of the court of common pleas may in turn be appealed to the Supreme Court of Errors. Conn.Gen.Stats. § 52–263.

### Plaintiff's Prior State Court Action

Plaintiff appealed defendant's decision to terminate his contract by filing in

May, 1971, an action entitled Kaufman v. Richardson, et al., No. 4147, in the Court of Common Pleas of Tolland County.[1] Plaintiff set forth in his complaint to the court of common pleas eleven reasons for his appeal of defendant's decision to terminate his contract. Plaintiff's first stated reason was that the grounds given by defendant as the reason for his termination were not lawful grounds for termination of a tenured teacher under Conn.Gen.Stats. § 10–151(b). Plaintiff also alleged in several ways that defendant "improperly" failed to confine its hearing to evidence of lawful grounds for termination, that plaintiff was given no prior notice of evidence which went beyond the stated charges, and that defendant "improperly" failed to incorporate into the record all the evidence which it heard and upon which it acted. On this basis plaintiff alleged that defendant had acted arbitrarily, unreasonably, and in abuse of its discretion. Furthermore, insofar as defendant had solicited evidence *de hors* the record, plaintiff alleged the deprivation "of a full and fair opportunity of hearing the evidence against him, of presenting evidence in his own behalf, and [of] the right of cross examination."

In July, 1972, plaintiff filed a brief in support of his appeal in the court of common pleas in which he declared in his statement of the case: "The Appellant has complained that the reasons re-lied upon by the local Board of Education for the termination of his tenured teacher's contract are not lawful grounds for termination under the Connecticut General Statutes. The authority of local school boards to hire and fire teachers is not inherent but is derived from the State by legislative enactment. . . . [Para.] . . . Appellant's fundamental claims concern the adequacy of both the notice provided to him of the reasons for the proposed termination of his contract and the stated grounds relied upon by the Board to support its final decision after his hearing." Plaintiff went on in his brief to summarize the bases for his appeal as defendant's failure to abide by the procedural and substantive provisions of Connecticut law applicable to tenured teacher terminations, and, insofar as Conn.Gen.Stats. § 10–151(b) "purports to authorize the termination of a contract on the basis of 'inefficiency or incompetence' or 'other due and sufficient cause,'" that portion of Conn.Gen.Stats. § 10–151(b) "is unconstitutionally vague and overbroad." Thus, plaintiff concluded, "[t]o the extent the local Board of Education relied upon these specific grounds, its action is in violation of fundamental due process under the Fifth and Fourteenth Amendments to the United States Constitution[2] and violates the First Amendment due to overbreadth." The first argumentative section of plaintiff's brief to the court of common pleas was

---

1. Mr. Richardson is apparently a member of defendant Board of Education. It is undisputed that the parties in the court of common pleas action are the same as the parties in the instant action, although in the state court action plaintiff named the Board members as individual parties to the action. In referring to the parties to the state court action, I have, for the sake of convenience, retained the terms attaching to the parties before this Court, *i.e.,* I refer to the appellant as "plaintiff" and to the respondents as "defendant."

2. Plaintiff's priorities in the arguments he submitted to the court of common pleas as grounds for reversal of defendant's decision to terminate his contract, are reflected by the footnote at this point in plaintiff's brief:

"The Appellant raises several other grounds for reversal of the Board's decision which are founded upon an analysis of the transcript of the recorded hearing and may further involve an evidentiary hearing before this Court as permitted by Section 10–151(f). These issues will be treated later in this brief."
This later discussion apparently occurred at pp. 12–18 and 20–22 of the brief. Plaintiff's brief began with a five page statement of the case; his arguments on the unconstitutionality of Conn.Gen.Stats. § 10–151(b) appear at pp. 5–12. Plaintiff contested at pp. 18–20 the adequacy of the pre-hearing notice provided him by defendant, asserting at p. 19 that he was entitled to adequate notice "as a matter of statutory intent and fundamental due process." .

headed "THE CONSTITUTIONALITY OF SECTION 10–151(b)." After concluding this section, plaintiff went on to argue that "[a]part from the apparent constitutional infirmities caused by the language of Section 10–151(b), the Board in any event failed to act within the limits of [its] statutory authority."

Defendant's nine-page brief to the court of common pleas termed the issue on appeal to be whether defendant had acted "illegally." The test of legality, according to defendant, was whether plaintiff had had "a reasonable opportunity to hear and be heard upon the allegations raised and whether the proceedings were conducted in a fair manner. The fact that the hearing on this matter required four sessions lasting approximately fifteen hours covering testimony of fourteen witnesses, most of whom appeared on behalf of the plaintiff, makes it self-evident that the plaintiff was afforded a fair hearing. As a result, the sole question for this Court is whether the record supports the Board's decision." Defendant went on to recite extensively the evidence of defendant's irresponsibility and insubordination in his discharging of his duties, and argued that this evidence provided ample grounds for plaintiff's termination, under the "other due and sufficient cause" clause of Conn.Gen.Stats. § 10–151(b), if not under the other grounds for termination set forth in the statute. Defendant made no mention of plaintiff's constitutional challenge to the "other due and sufficient cause" clause.

### Prior State Court Judgment

In regrettable disregard for the appearance if not the substance of justice, the court of common pleas chose in its decision of March 27, 1973, to regurgitate *verbatim* the entirety of defendant's brief, with the deletion only of defendant's headings and but two or three other miniscule and insignificant modifications. The only addition to defendant's brief in the entire memorandum of decision by the court of common pleas was the words: "[The Board] did not act illegally, arbitrarily, and in abuse of its discretion. [Para.] The appeal is dismissed." Thus the court of common pleas gave no explicit attention, or even recognition, to plaintiff's constitutional claims.

### Plaintiff's Civil Rights Suit

Plaintiff did not appeal the judgment of the court of common pleas. He instead brought the instant action in federal court, seeking compensatory and equitable relief in the form of reinstatement with back pay and damages for injury to his career and reputation. Plaintiff alleges a cause of action under the Civil Rights Act, 42 U.S.C. § 1983, in that defendant's termination of plaintiff's contract deprived plaintiff of due process of law. This due process claim is explicated as involving both procedural due process, in that plaintiff was given inadequate notice of the charges against him, and substantive due process, in that Conn.Gen.Stats. § 10–151(b) is unconstitutionally vague and overbroad in permitting termination of plaintiff for "inefficiency or incompetence" or "other due and sufficient cause." Plaintiff also claims that defendant's alleged failure to comply with Connecticut statutory procedures for notice, hearing, and decision in tenured teacher termination cases, constituted a violation of his right to due process.

### Res Judicata

██ Defendant has moved for dismissal of plaintiff's complaint for failure to state a claim on which relief can be granted. Fed.R.Civ.P. 12(b)(6). Defendant supports this motion with the claim that the court of common pleas' decision in Kaufman v. Richardson, et al., *supra*, bars plaintiff's subsequent action in this Court under the doctrine of res judicata. This assertion of res judicata is proper on a motion to dismiss, so long as such a motion is treated as a "speaking" motion which by referring to material not in the complaint itself, such as a prior judgment, becomes in effect a

motion for summary judgment.[3] Fed. R.Civ.P. 12(b), 56; Butterman v. Walston & Co., 50 F.R.D. 189, 191 (E.D. Wis.1970); Katz v. Connecticut, 307 F. Supp. 480, 483 (D.Conn.1969), aff'd 433 F.2d 878 (2d Cir. 1970); J. Moore, 2A Federal Practice Para. 12.09, at p. 2307 (2d Ed. 1970). In the instant case plaintiff alleges in his complaint his prosecution of an appeal in the court of common pleas. The fact of this appeal and the contents of the pleadings and judgment therein were undisputed at oral argument, which focused solely on the merits of defendant's claim that the judgment of the court of common pleas should be accorded res judicata effect.

Plaintiff argues against the invocation of res judicata on the grounds that the causes of action sued upon in state and federal court are not the same, and that res judicata should be applied in civil rights actions only where it has been proved that a plaintiff's federal claims were fully and unreservedly submitted for decision to the state court, and that the state court accorded these claims specific and conscientious consideration.

### Identity of Causes of Action

 Federal courts have relied heavily on the Restatement of Judgments, §§ 61–67 (1942), for definition of a cause of action for res judicata purposes. See Thomas v. Consolidation Coal Co., 380 F.2d 69, 79, n. 15 (4th Cir. 1967). See also Lawlor v. National Screen Service, 349 U.S. 322, 328, 75 S. Ct. 865, 99 L.Ed. 1122 (1955); McNellis v. First Fed. S. & L. Ass'n of Rochester, 364 F.2d 251, 255–256 (2d Cir. 1966).[4] The "operative facts" of a claim determine whether such claim is identical to a previously litigated cause of action, McNellis v. First Fed. S. & L. Ass'n of Rochester, supra, 364 F.2d at 255; "if the evidence needed to sustain the second action would have sustained the first action," Restatement of Judgments, § 61, at 240 (1942), then the first claim is res judicata re the second claim. The assertion of different theories of recovery in the two causes of action does not necessarily mean the causes of action are not identical. McNellis v. First Fed. S. & L. Ass'n of Rochester, supra, 364 F.2d at 255. "Where a judgment on the merits is rendered in favor of the defendant, the plaintiff is precluded from subsequently maintaining a second action based upon the same operative facts in which he seeks an alternative remedy . . . . In such a case he has had his day in court, and having lost upon the merits he is not entitled again to litigate his claim." Restatement of Judgments, § 65, Comment, at 272 (1942).

Plaintiff relies on Lawlor v. National Screen Service, supra, for the proposition that "essentially the same course of wrongful conduct . . . may frequently give rise to more than a single cause of action." Plaintiff's Memorandum against Motion to Dismiss, at 6. Lawlor held only that a continuous course of wrongful conduct, which is

3. Although treated in some respects as an ordinary affirmative defense under federal procedure, see Fed.R.Civ.P. 8(c), Williams v. Murdoch, 330 F.2d 745, 749 (3rd Cir. 1964), an assertion of res judicata may also challenge the court's jurisdiction, see pp. 36–37, infra. In such circumstances, it is especially appropriate to assert res judicata by a motion to dismiss, the prescribed vehicle for raising jurisdictional defenses. See Fed.R.Civ.P. 12(b)(1), (2).

4. "For purposes of applying the doctrine of res judicata, '[a] cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief. [Citation omitted.] Even though a single group of facts may give rise to rights for several different kinds of relief, it is still a single cause of action.' Bridgeport Hydraulic Co. v. Pearson, 139 Conn. 186, 197, 91 A.2d 778, 782 (1952)." Katz v. Connecticut, supra, 307 F.Supp. at 484. This Connecticut definition of a cause of action for res judicata purposes is in accord with federal law; thus no inquiry is necessary into whether state or federal law is applicable in deciding the res judicata effect of a state judgment urged as a bar to a federal suit. See McNellis v. First Fed. S. & L. Ass'n of Rochester, supra, 364 F.2d at 254, n. 4.

subject to abatement, such as the creation and perpetuation of a nuisance or a monopoly, may give rise to more than one cause of action, relying expressly on Restatement of Judgments, § 62, Comment g (1942). Lawlor v. National Screen Service, *supra*, 349 U.S. 327–328, n. 13, 75 S.Ct. 865.

█ It is clear that plaintiff's instant civil rights action does assert the same cause of action litigated in the court of common pleas. Plaintiff here complains of the same course of conduct—the termination of his contract by defendant through statutorily and constitutionally defective procedures and under an unconstitutional statute—as was presented to the court of common pleas as grounds for that court's reversal of defendant's action. The only difference between plaintiff's state and federal actions is the remedies sought. Plaintiff alleged in state court that his contract was wrongfully terminated and sought the remedy provided by state statute—reversal of defendant's refusal to renew his contract. Plaintiff has alleged to this Court that the same contract was wrongfully terminated by the same defendant at the same time, and seeks the remedies provided by the Civil Rights Act—reinstatement with back pay as well as incidental damages. "[T]he addition of federal theories of recovery . . . does not create a new cause of action." Saylor v. Lindsley, 391 F.2d 965, 969, n. 6 (2d Cir. 1968).

### Broad Scope of General Rule of Res Judicata

█ Plaintiff does not appear to dispute that ordinarily state courts have jurisdiction conclusively to decide federal questions submitted to them, and that once the choice is made to litigate an action in state court, all relevant questions of law, state and federal, are deemed decided by the judgment whether presented to the court or not. Grubb v. Public Utilities Comm., 281 U.S. 470, 476, 478–479, 50 S.Ct. 374, 74 L.Ed. 972 (1930). "The general rule of *res judicata* is that

a valid, final judgment, rendered on the merits, constitutes an absolute bar to a subsequent action between the same parties, or those in privity with them, upon the same claim or demand. It operates to bind the parties both as to issues actually litigated and determined in the first suit, and as to those grounds or issues which might have been, but were not, actually raised and decided in that action. The first judgment, when final and on the merits, thus puts an end to the whole cause of action." Saylor v. Lindsley, *supra*, 391 F.2d at 968.

█ The fact that a state court may not respond specifically to a party's constitutional contentions does not rob its judgment of res judicata effect. Grubb v. Public Utilities Comm., *supra*, 281 U.S. at 477–478, 50 S.Ct. 374. The only requirement for a valid, final judgment to be binding on all parties as to that cause of action, is that the judgment have been on the merits, rather than on some jurisdictional or other technical ground. Saylor v. Lindsley, *supra*, 391 F.2d at 968. Cf. Whitner v. Davis, 410 F.2d 24, 31 (9th Cir. 1969). A judgment may be accorded res judicata effect in the absence of any opinion at all, so long as the pleadings reveal that no basis existed for the judgment other than a determination of the merits of the case. Napa Valley Elec. Co. v. Railroad Comm., 251 U.S. 366, 371–373, 40 S.Ct. 74, 64 L.Ed. 310 (1920); Thomas v. Consolidation Coal Co., *supra*, 380 F.2d at 80–85.

### Conditional Application of Res Judicata in Abstention Cases

Plaintiff seeks to avoid application of the general rule to his case by urging that special standards should govern the invocation of res judicata in civil rights cases. Under such special standards, plaintiff argues that his asserted failure to raise his constitutional claims in the state court, and that court's admitted failure to mention constitutional issues in its opinion, are sufficient to remove the bar of res judicata to his action in

this Court. Plaintiff relies principally on an exception to the conclusiveness of state adjudications of federal claims which the Supreme Court has fashioned for actions originally brought in federal courts but subsequently litigated in state courts upon the federal courts' abstention from exercising jurisdiction.

The Supreme Court declared in England v. Medical Examiners, 375 U.S. 411, 415, 84 S.Ct. 461, 464, 11 L.Ed.2d 440 (1964): "There are fundamental objections to any conclusion that a litigant who has properly invoked the jurisdiction of a Federal District Court to consider federal constitutional claims can be compelled, without his consent and through no fault of his own, to accept instead a state court's determination of those claims. [Footnote omitted.] . . . 'The right of a party plaintiff to choose a Federal court where there is a choice cannot properly be denied.' [Citation omitted.]" The Court had held in Government Employees v. Windsor, 353 U.S. 364, 366–367, 77 S.Ct. 838, 1 L.Ed.2d 894 (1957), that when a federal court abstained from deciding a constitutional challenge to a state statute pending construction of the statute by the state's courts, the plaintiff thus forced to go from federal to state court had to present his constitutional claims to the state court. In England, the Court declared that Windsor "does not mean that a party must litigate his federal claims in the state courts, but only that he must inform those courts what his federal claims are, so that the state statute may be construed 'in light of' those claims." 375 U.S. at 420, 84 S.Ct. at 467. The Court went on to note that "a party may readily forestall any conclusion that he has elected not to return to the District Court . . . by making on the state record [a] 'reservation to the disposition of the entire case by the state courts' . . . . Such an explicit reservation is not indispensable; the litigant is in no event to be denied his right to return to the District Court unless it clearly appears that he volun-

tarily did more than *Windsor* required and fully litigated his federal claims in the state courts. [Footnote omitted.]" 375 U.S. at 421, 84 S.Ct. at 468.

Plaintiff contends that the conditional res judicata effect accorded by *England* to state court adjudications of constitutional claims *after* federal abstention should be applied as well to plaintiffs who, in anticipation of abstention by a federal court, originally bring their action in the state courts. Plaintiff argues that it should be unnecessary to first go into federal court, and then into state court upon the federal court's abstention, in order to preserve a right to ultimate federal adjudication of a civil rights claim.

### Established Applicability of General Rule of Res Judicata to Civil Rights Actions

A formidable obstacle to adoption of plaintiff's position is the line of cases which apply standard res judicata doctrine to civil rights cases brought on causes of action which have already been litigated, *ab initio* and without prior federal abstention, in state courts. Thus in a pre-*England* case in which it was clear from the state court's opinion that the plaintiff's "federal rights were involved and passed on" by the state court, plaintiff's subsequent civil rights suit was dismissed as res judicata. Norwood v. Parenteau, 228 F.2d 148, 149–150 (8th Cir. 1955). The suggestion that *England* might have changed the application of res judicata principles to general federal question suits under 28 U.S.C. § 1331 in non-abstention cases was summarily rejected in Lavasek v. White, 339 F.2d 861, 863 (10th Cir. 1965).

Even more emphatic and comprehensive was the application of the general rule of res judicata to a civil rights action in Frazier v. East Baton Rouge Parish School Board, 363 F.2d 861 (5th Cir. 1966), which concerned the dis-

charge of a tenured black school teacher by a Louisiana school board. The discharge was upheld by the state courts, and Frazier did not seek review by the United States Supreme Court. Rather, Frazier filed an "Application for Judicial Review" in federal court alleging, *inter alia,* for the first time, that he had been fired because of his race, and hence in violation of his civil rights under 42 U.S.C. § 1983. The Court of Appeals upheld the district court's holding that its consideration of the civil rights claim was barred by res judicata.

> "If state administrative action is first challenged in the state court, and the state court acts judicially, the state court decision is *res judicata* and bars a decision by a federal court. [Citations omitted.] Under the doctrine of *res judicata,* where the second action is based upon the same cause of action as that upon which the first action was based, the judgment is conclusive as to all matters which were litigated or *might have been litigated* in the first action. See Restatement, [Judgments,] §§ 47, 48 (1942). Therefore, the decision of the state court of appeal, acting judicially, is a bar to Frazier's claim in the federal district court even though he raises his federal claim of discrimination for the first time in the federal court. In these circumstances, once Frazier submitted his challenge to state administrative action to state judicial review, the only appropriate federal forum for review of his alleged federal claim of discrimination was the United states Supreme Court. He bypassed that opportunity. The district court therefore correctly determined it had no jurisdiction." 363 F.2d at 862.

Several other courts are in accord with *Frazier* in holding that civil rights claims which were not raised or decided in prior state court actions were nevertheless barred by the prior state court judgments if the civil rights claims arose from the causes of action therein adjudicated. See Taylor v. New York City Transit Authority, 433 F.2d 665 (2d Cir. 1970); Coogan v. Cincinnati Bar Assoc., 431 F.2d 1209, 1211 (6th Cir. 1970); Howe v. Brouse, 422 F. 2d 347, 348 (8th Cir. 1970); Davis v. Adams, 315 F.Supp. 1293 (N.D.Fla. 1970). See also Bricker v. Sceva Speare Mem. Hosp., 339 F.Supp. 234, 239–240, n. 7 (D.N.H.1972), aff'd 468 F.2d 1228 (1st Cir. 1972).

### Precedent for Limiting Application of Res Judicata to Civil Rights Cases

Unless there is emerging in the law a recognition of the need of a "reservation" doctrine for civil rights cases akin to that announced in *England* for abstention cases, the foregoing cases dispose of plaintiff's contention that res judicata should not attach to the judgment of the court of common pleas, insofar as that judgment impliedly rejected any constitutional claims. One case does support plaintiff in this fashion. Suarez v. Administrador Del Deporte Hipico de P. R., 354 F.Supp. 320 (D.P.R.1972), concerned the application of a horse-racing regulation to an individual so as to require the forfeiture of a substantial sum of prize money. The plaintiff first sought relief in local courts before filing a civil rights action, but the federal court refused to hold the plaintiff's claim barred by the general rule of res judicata.

> "Here, the plaintiff did go to the local courts first. The defendant, citing [*England*], alleges that the plaintiff unreservedly submitted the federal constitutional issues to the Commonwealth courts and his only remaining recourse was to petition the Supreme Court for review.

> "The Supreme Court, in *England,* supra, held at page 419 [of 375 U.S., 467 of 84 S.Ct.]:

> " '. . . We now explicitly hold that if a party freely and without reservation submits his federal claims for decision by the state

courts, litigates them there, and has them decided there, then—whether or not he seeks direct review of the state decision in this Court—he has elected to forgo his right to return to the District Court.'

"The Court has, therefore, carefully analyzed the pleadings and briefs of the plaintiff. The net effect of this mass of papers was to request the Superior and Supreme Court of Puerto Rico to construe the regulation contrarywise from the construction of the Administrator on the grounds of logic, grammar, state law and the state constitutional guarantees. The federal constitutional challenge was alleged but only as a backdrop for local construction. There was neither an exhaustive nor extensive argument of the federal claims; merely a presentation thereof as required by the reading of [*Windsor*, supra,] and [*England*, supra].

"Had the plaintiff filed in this Court in the first instance, we would have been constrained to remand the state issues to the local courts for an authoritative construction of the regulations under the teaching of these cases and Fornaris v. Ridge Tool Co., 400 U.S. 41 [91 S.Ct. 156, 27 L.Ed.2d 174] (1970). It is apparent that plaintiff did no more than this Court would have required him to do. To insist that plaintiff was under the obligation to initiate his action in this Court and then to be relegated to the Superior Court with a reservation of the federal issues here, would only strain the aggravated calendar of this Court and force sterile duplication of effort." 354 F.Supp. at 325–326.

*Jurisdictional Aspects of Res Judicata*

▮▮▮▮ The considerations expressed in *Suarez* are plausible.[5] But res judicata, at least insofar as it pertains to federal relitigation of a cause of action in which a prior final judgment has been entered by a state court, involves jurisdictional issues as well as considerations of judicial convenience underlying the doctrine of res judicata. See Tang v. App. Div. of N. Y. Sup. Ct., 487 F.2d 138 (2d Cir. 1973). As the Supreme Court declared in Rooker v. Fidelity Trust Co., 263 U.S. 413, 415–416, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923):

"If the constitutional questions [raised in a federal action] actually arose in [a prior state] cause, it was the province and duty of the state courts to decide them; and their decision, whether right or wrong, was an exercise of jurisdiction. If the decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding. Unless and until so reversed or modified, it would be an effective and conclusive adjudication. [Citations omitted.] Under the legislation of Congress, no court of the United States other than this Court could entertain a proceeding to reverse or

---

5. Plaintiff urges that support for *Suarez* may be found, at least implicitly, in recent First Circuit cases concerning the related doctrine of collateral estoppel, in which the Court of Appeals emphasized that the constitutional claims held barred from relitigation in federal court by prior state judgments had been expressly considered by the state courts. *See* Bricker v. Crane, 468 F. 2d 1228, 1230 (1st Cir. 1972); P I Enterprises, Inc. v. Cataldo, 457 F.2d 1012, 1015 (1st Cir. 1972). But collateral estoppel has always been a more narrowly applied bar than res judicata. Since collateral estoppel applies in a second, different cause of action to bar relitigation of issues conclusively adjudicated in a prior cause of action, it must be shown to a certainty that the judgment in the first cause of action did indeed entail adjudication of the assertedly barred issue. Res judicata applies only to relitigation of the same cause of action in which judgment has previously been entered, but as to that cause of action all issues are deemed barred whether actually litigated or not. *See* Cromwell v. County of Sac, 94 U.S. 351, 352–353, 24 L.Ed. 195 (1876).

modify the judgment for errors of that character. . . . To do so would be an exercise of appellate jurisdiction. The jurisdiction possessed by the District Courts is strictly original."

*Rooker's* requirement that federal questions must have "actually ar[isen]" in the cause of action litigated in the state courts leaves some slight leeway for accommodation between the call in *Suarez* for a common-sense application of the principles of *England* to civil rights actions in which the plaintiff has sought to dispose of state issues prior to entering federal court, and Congress' denial to federal district courts of appellate jurisdiction over state adjudications of federal claims. But if this leeway does allow this Court's review of Federal issues *not* submitted for decision to the court of common pleas in the instant case, the danger of this Court exceeding its jurisdiction by engaging in appellate review makes it advisable for the Court to apply a presumption of submission of federal claims to state courts where, unlike the situation in *England,* plaintiff has first brought his suit in the state court.

▮ By virtue of the plaintiffs' initial choice of a federal forum, abstention cases do not involve the delicate jurisdictional issue present here. Federal abstention may be deemed to imply a retention of original jurisdiction over federal claims, so that a federal court's consideration of these claims even after a state judgment may still be an exercise of original rather than appellate jurisdiction, if the plaintiff has not abandoned his initial assertion of his right to federal adjudication of his federal claims. Thus in *England* res judicata effect was denied to state judgments rendered on causes of action first brought in abstaining federal courts "unless it clearly appears that [the plaintiff] voluntarily [submitted] and fully

litigated his federal claims in the state courts." 375 U.S. at 421, 84 S.Ct. at 468. In the instant case, however, absent plaintiff's initial invocation of this Court's original jurisdiction, the judgment of the court of common pleas must be deemed a conclusive adjudication of plaintiff's entire cause of action unless it affirmatively appears that plaintiff reserved his federal claims for subsequent federal adjudication, and that the state court was made aware of this reservation.

Under this standard I hold that plaintiff's action in this Court is barred as res judicata by the judgment of the court of common pleas. I base this holding primarily on plaintiff's extensive discussion of constitutional issues in his brief to the state court. See p. 30, *supra*. "It is established that for purposes of res judicata the pleadings are examined to ascertain the issues involved and determined." St. Lo Const. Co. v. Koenigsberger, 84 U.S.App.D.C. 319, 174 F. 2d 25, 27 (1949). This examination of the pleadings extends to the entire record before the court, including the contentions of the parties as expressed in their briefs. Oklahoma v. Texas, 256 U.S. 70, 88, 41 S.Ct. 420, 65 L.Ed. 831 (1921); Pennsylvania v. Brown, 373 F. 2d 771, 777 (3rd Cir. 1967). Plaintiff fully argued his federal claims in his brief to the court of common pleas, not merely as a background to the state issues tendered to the court, but as an independent and indeed the principal ground for reversal of defendant's decision to terminate plaintiff's contract. No effort was made explicitly or even implicitly to reserve plaintiff's federal claims for subsequent consideration by this Court. Even were I to apply the more favorable standard of *England,* I would have to hold that plaintiff freely and fully submitted his federal claims for decision to the state court.

The motion to dismiss is granted.

So ordered.